The **SOUTHERN NEW ENGLAND TELEPHONE COMPANY,** Plaintiff,

v.

**GLOBAL NAPS, INC.,** Global Naps New Hampshire, Inc., Global Naps Networks, Inc., Global Naps Realty, Inc. and Ferrous Miner Holdings, Ltd., Defendants.

**Convergent Networks, Inc. and Frank T. Gangi, Reach and Apply Defendants.**

**Civil Action No. 08–12052–NMG.**

United States District Court, D. Massachusetts.

May 14, 2009.

Hans J. Germann, Mayer Brown LLP, Chicago, IL, Timothy F. Holahan, Kelley A. Jordan–Price, Christina L. Lewis, Hinckley, Allen & Snyder, LLP, Boston, MA, Timothy P. Jensen, Hinckley, Allen & Snyder, LLP, for Southern New England Telephone Company.

Eric C. Osterberg, Fox Rothschild LLP, Stamford, CT, for Convergent Networks, Inc.

William J. Rooney, Jr., Norwood, MA, for Reach and Apply Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

In this case, certain reach and apply defendants previously enjoined by the Court now seek to dissolve the preliminary injunction against them or, in the alternative, to limit its scope.

## I. *Background*

### A. **Factual Background**

Plaintiff Southern New England Telephone Company ("SNET") brought suit in the United States District Court for the District of Connecticut to recover money owed by defendants Global NAPs, Inc., Global NAPs New Hampshire, Inc., Global NAPs Networks, Inc., Global NAPs Realty, Inc. ("Global NAPS realty") and Ferrous Miner Holdings, Ltd. (collectively "the judgment debtors") which are all companies wholly owned, directly or indirectly, by reach and apply defendant Frank Gangi ("Gangi"). SNET was awarded a default judgment of over five million dollars in that suit on July 9, 2008.

Because the judgment debtors did not own enough property in Connecticut to satisfy that judgment, SNET registered the judgment in this District on October 28, 2008. SNET's efforts in another session of this Court to attach the judgment debtors' bank accounts and personal property in Massachusetts proved futile because most of the assets had, in the meantime, been transferred elsewhere. SNET alleges that the defendants have fraudulently conveyed millions of dollars of funds and assets to the reach and apply defendants, all of which (except for Gangi himself) are apparently wholly owned and/or managed by Gangi, to prevent SNET from satisfying the judgment it obtained in the Connecticut court.

### B. **Procedural History**

On December 10, 2008, SNET filed a complaint with this Court naming the judgment debtors as defendants and Gangi and Convergent Networks, Inc. ("Convergent") as reach and apply defendants. On the same day, it filed an *ex parte* motion for a temporary restraining order ("TRO") to enjoin Convergent and Gangi from transferring any of their real or personal property except for what is reasonable and necessary for the ongoing operation of Convergent's business and for Gangi's personal living expenses up to $10,000. This Court granted the TRO on the following day and converted it into a preliminary injunction after a hearing held on December 31, 2008. As ordered by the Court in conjunction with the TRO and preliminary injunction, SNET posted two security bonds in the amounts of $5,000 and $100,000, respectively. The Court later authorized the rescission of the $5,000 bond.

On January 14, 2009, SNET filed an amended complaint asserting additional reach and apply claims against 1) Chesapeake Networks, Inc., 2) 1120 Hancock Street, Inc. ("1120 Hancock"), 3) BABP (IV), LLC, 4) CJ3, Inc. ("CJ3") and 5) RJ Equipment, Inc. Shortly thereafter, SNET filed an *ex parte* motion for another TRO and preliminary injunction to enjoin 1120 Hancock from transferring or encumbering its interest in real property located at 1120 Hancock Street in Quincy, Massachusetts, and to enjoin CJ3 from transferring or encumbering its interest in a Cessna Citation ("the Cessna"), a private aircraft allegedly used primarily by Gangi. This Court granted the TRO and converted it to a preliminary injunction on March 5, 2009. In connection therewith, SNET posted another $5,000 bond.

On March 3, 2009, Convergent and Gangi filed a motion pursuant to Fed.R.Civ.P. 60(b) to amend or dissolve the December 31, 2008 injunction based on the production of previously unavailable invoices, purchase orders, packing lists and sales orders from Convergent. At the hearing held on the preliminary injunction, counsel for Convergent was unable to produce such documents despite the Court's request for them as one form of proof that the transfer of funds from the judgment debtors to Convergent were not fraudulent.

Since the filing of that motion, the defendants and reach and apply defendants have jointly filed a motion for leave to amend their answers and a motion to dismiss or stay. In the interest of promptly addressing the issue of injunctive relief, the Court will defer its consideration of the most recently filed motions.

## II. *Legal Analysis*

### A. Legal Standard

SNET argues that a motion pursuant to Fed.R.Civ.P. 60(b) is improper here because that rule applies only to final judgments and the entry of a preliminary injunction is an interlocutory order. It also asserts that the viability of the motion cannot be attained pursuant to Fed. R.Civ.P. 54(b), which permits the revision of interlocutory orders, because such a motion is only justiciable if changed circumstances arising after the entry of the order make continuation of the order inequitable. Rather, SNET contends that the motion could only have been brought pursuant to Fed.R.Civ.P. 59(e). In support of its arguments, however, SNET cites only caselaw from circuits other than the First Circuit.

In the First Circuit, a district court may modify a preliminary injunction pursuant to Fed.R.Civ.P. 60(b)(5) where "it is no longer equitable that the judgment should have prospective application" and there is a "significant ... change in operative fact." *Concilio de Salud Integral de Loiza, Inc. v. Perez–Perdomo,* 551 F.3d 10, 16 (1st Cir.2008) (internal quotation marks and citation omitted).

### B. Application

Convergent and Gangi assert that there has been a significant change in the factual circumstances in this case that warrants dissolution of the preliminary injunction against them. That change is their production of documents that they claim demonstrate that "equivalent value" was given in consideration for the allegedly fraudulent transfers from Global NAPs in 2004 through 2006, thus negating SNET's claim of fraudulent transfer pursuant to M.G.L. c. 109A, § 5(a).

As SNET suggests, the production of pre-existing documents to the Court is not a significant change in the operative facts underlying this case. Moreover, Convergent and Gangi could just as easily have produced those documents at or before the

hearing that was held on December 31, 2008. They should not have waited until three months after the entry of a preliminary injunction to do so.

SNET also asserts that the documents should have been produced more than a year ago (but were not) in response to document requests and a motion to compel with respect to, *inter alia*, "all invoices from ... Convergent Networks" served on the judgment debtors during the course of the Connecticut litigation. It, therefore, reasonably questions whether the documents now produced are genuine, particularly because Gangi and one of his other companies have been sanctioned for falsifying and fabricating documents in the past.

In addition, SNET argues that the documents do not, in fact, prove that Global NAPs received equivalent value for its transfers to Convergent. For example, SNET points to $5.7 million shown to have been transferred from Global NAPs to Convergent in 2006 in the form of "loan receivables" but Convergent appears to have made no additions to its equipment assets that year except for two "T–1 network cards" purchased for $34,500. Although Convergent has alleged that it provided maintenance services in exchange for the funds from Global NAPs, there is no evidence of that within the documents produced. Therefore, Convergent and Gangi have failed to carry their burden of proving that the preliminary injunction should be dissolved.

■ In the alternative, Convergent and Gangi assert that the preliminary injunction should be amended because its language is overly broad in that it 1) enjoins Convergent's "directors, officers, trustees and beneficiaries, employees, agents and attorneys" (and not just Convergent) from "alienating, transferring, encumbering or otherwise diminishing any interest ... in any real and personal property" and 2)

permits only Convergent (and not the other enjoined parties) to take "such actions that are reasonable and necessary to the ongoing and continued operation of its business in the ordinary course of business". It requests that the Court clarify that the individuals associated with Convergent may do what they want with their own personal property (i.e., property that does not belong to Convergent) and that *all* enjoined parties are free to continue activities in the ordinary course of business.

SNET responds that such modification is unnecessary because no reasonable person could interpret the preliminary injunction as the reach and apply defendants posit. The requested modifications do not seem unreasonable, however, and the Court will, therefore, allow the motion in that respect.

### ORDER

In accordance with the foregoing, the motion to dissolve or amend the December 31, 2008 preliminary injunction (Docket No. 67) is, with respect to certain modifications, **ALLOWED** but is otherwise **DENIED**. A modified preliminary injunction is set forth separately.

**So ordered.**